79 F.3d 1152
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jose Dionicio CERDA-OBANDO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70589.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 12, 1996.*
Decided March 18, 1996.
 
 Before: GOODWIN, WIGGINS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jose Dionicio Cerda-Obando, a native and citizen of Nicaragua, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the order of an immigration judge ("IJ"), denying his application for asylum under sections 208(a) and 243(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(a) and 1253(h).[1] We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we reverse and remand the petition to the BIA for findings consistent with this memorandum disposition.
 
 
 3
 We review questions of law regarding the INA under the de novo standard. See Singh v. Ilchert, 63 F.3d 1501, 1506 (9th Cir.1995). Factual determinations will be upheld "if supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4).
 
 
 4
 A two-step inquiry is required in evaluating requests for asylum: whether the applicant is eligible for asylum and whether an eligible applicant is entitled to asylum as a matter of discretion. Kazlauskas v. INS, 46 F.3d 902, 905 (9th Cir.1995). To be eligible for asylum, an applicant must demonstrate that he or she has suffered past persecution, or has a well-founded fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. §§ 1101(a)(42)(A), 1158(a); Lazo-Majano v. INS, 813 F.2d 1432, 1434 (9th Cir.1987). An asylum applicant "must present some evidence, direct or circumstantial," that the persecutor was motivated by the applicant's actual or imputed political opinion. Canas-Segovia v. INS, 970 F.2d 599, 601 (9th Cir.1992) (citing INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992)). To obtain a reversal, an applicant must show that his or her evidence " 'was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed.' " Shirazi-Parsa, 14 F.3d at 1427 (quoting Elias-Zacarias, 502 U.S. at 481). The beating, arrest, and assault of an applicant for purposes of economic extortion, which led to severe economic hardship, is sufficient to constitute past persecution. See Desir v. Ilchert, 840 F.2d 723, 729 (9th Cir.1988).
 
 
 5
 Once past persecution is established, the likelihood of present or future persecution is relevant as to whether asylum will be granted as a matter of discretion. See 8 C.F.R. § 208.13(b)(1)(i); Singh, 63 F.3d at 1510. The establishment of past persecution creates a rebuttable presumption that the applicant has a well-founded fear of future persecution unless the Service presents evidence militating against a favorable exercise of discretion by demonstrating that there is little likelihood of present or future persecution. Id. Threats and acts of violence against an applicant's family members sufficiently demonstrates that the applicant has a well-founded fear of persecution. See Rodriguez v. INS, 841 F.2d 865, 870-71 (9th Cir.1987).
 
 
 6
 Cerda-Obando contends that the evidence presented to the IJ compels a finding that he suffered past persecution on account of his actual or imputed political opinion. We agree.
 
 
 7
 Here, Cerda-Obando testified that on numerous occasions State Security officers harassed and threatened him at his home. Once, a State Security agent beat Cerda-Obando in front of his home for being a "reactionary" and a "Contra." Following the beating, the State Security Agent pulled out his gun but Cerda-Obando was rescued when his mother intervened and pled for his life. The State Security Agent let Cerda-Obando go but warned him that they would meet again. Cerda-Obando required medical attention as a result of this incident. On another occasion, a mob organized by the CDS demonstrated in front of Cerda-Obando's house, started a bonfire, burned tires and chanted slogans.
 
 
 8
 Cerda-Obando additionally testified that because the CDS considered Cerda-Obando to "not [be] in agreement with the revolution," he suffered substantial economic hardship. First, the CDS had the Ministry of Interior Commerce ("MICOIN") confiscate Cerda-Obando's entire inventory without compensation and search his house. The CDS told Cerda-Obando that the reason for its action was that he was not "in agreement with the revolution." Second, Cerda-Obando's business license was cancelled. Again, the CDS cited his lack of agreement with the revolution as the reason for taking such action. Third, Cerda-Obando's food rationing card was cut off. Fourth, the CDS denied him the necessary letter for obtaining new employment. Once again, the reason given for this treatment was that he was against the revolution. In order to survive without official employment, Cerda-Obando lived on his uncle's farm and worked for food. After working on the farm for approximately one year, Cerda-Obando left Nicaragua in 1986.
 
 
 9
 Finally, Cerda-Obando testified that in 1982 his brother and cousin were arrested by State Security agents and held for two months on the suspicion that they were Contras. While imprisoned, State Security agents beat and tortured them, and barely gave them enough food to survive.
 
 
 10
 The IJ expressly found Cerda-Obando to be credible. See Singh, 63 F.3d at 1506. The evidence on the record considered as a whole compels a finding that Cerda-Obando was persecuted on account of an imputed political opinion that he was against the Sandinistas. See Canas-Segovia, 970 F.2d at 601. Accordingly, the IJ's finding that Cerda-Obando had not suffered past persecution lacks substantial evidence. See Shirazi-Parsa, 14 F.3d at 1427. The IJ and BIA did not apply the rebuttable presumption that Cerda-Obando had a well-founded fear of future persecution.[2] Although the IJ took administrative notice that the Nicaraguan government had changed, neither the IJ nor the BIA appear to have sufficiently evaluated whether the Sandinistas currently posed a threat to Cerda-Obando in particular. Accordingly, we remand to the BIA to exercise discretion under 8 U.S.C. section 1158(a) in determining whether Cerda-Obando should be granted asylum.
 
 
 11
 REVERSED AND REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. See Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, Cerda-Obando's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Cerda-Obando does not appeal the BIA's decision that he does not qualify for the withholding of deportation
 
 
 [2]
 The BIA held that even if it found that Cerda-Obando had been subjected to past persecution or had a well-founded fear of persecution, it would not exercise its discretion in granting asylum because the circumstances presented were not so severe as to justify humanitarian relief in accordance with Matter of Chen, Interim Decision 3104 (BIA1989). However, the issue of discretion must be viewed within the constraints of our law. See Singh v. Ilchert, 63 F.3d 1501, 1511 (9th Cir.1995). Because we hold that Cerda-Obando was subjected to past persecution, the burden was on the INS, not him, to show by a preponderance of the evidence that conditions in Nicaragua have changed to such an extent that the Sandinistas were truly without power so that the applicant can no longer have a well-founded fear of persecution. See 8 CFR § 208.13